UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW MCKENRY,<br><br>Defendants. | No. 1:15-CR-00231-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br>(Doc. No. 16) |

Defendant Matthew McKenry is charged in the indictment with two counts of violating 18 U.S.C. § 922(g)(1) — being a felon in knowing possession of a firearm — and is currently awaiting trial. Defendant filed a suppression motion relating to a search and seizure that occurred on August 4, 2015. (Doc. No. 16). Specifically, defendant contends that the police violated his Fourth Amendment rights by performing a pretextual vehicle stop absent objectively reasonable grounds for doing so. The challenged traffic stop set off a series of events that eventually led to the discovery of two handguns as well as ammunition. Defendant contends that because the traffic stop was unlawful, all of the evidence subsequently discovered must be excluded as "fruit of the poisonous tree."

**I. The Evidence**

This court held an evidentiary hearing with respect to defendant's motion to suppress evidence on February 16, 2016. At that time the government called two witnesses: Detective

1

Anthony Vallez and Detective Robert Fry of the Fresno Police Department. Defendant McKenry called a single witness, his wife Jessica McKenry née Gomez (hereinafter ―Ms. Gomez").[1] The testimony at the evidentiary hearing established the following.

On the afternoon of August 4, 2015, Detective Vallez, a member of the Multi-Agency Gang Enforcement Consortium, was conducting proactive patrol in full uniform and in a marked police vehicle in the vicinity of Floradora Avenue and Millbrook Avenue in Fresno. At approximately 2:40 p.m., Detective Vallez turned south onto Millbrook Avenue, at which time he observed a 1994 Oldsmobile Cutlass with a partially malfunctioning third brake light located in the middle of the back window of the vehicle. The car was being driven by defendant, and Ms. Gomez was in the passenger seat. According to testimony offered by Detective Vallez, and as evidenced by photographs submitted by defendant at the hearing, the right half of the third brake light did not fully illuminate as defendant braked his car. Believing that to constitute a violation of California Vehicle Code § 24252(a), Detective Vallez initiated a traffic stop of the car.

Detective Vallez approached the car after it stopped in a shopping center and requested identification from defendant and Ms. Gomez. Both complied, and Detective Vallez proceeded to perform a routine CLETS check. While the report was running, two other Fresno Police Department officers — Detective Fry and Sergeant Paul Cervantes — arrived on the scene. The CLETS report indicated that defendant McKenry was on Post Release Community Supervision, and Detective Vallez informed defendant that he would be performing a probation search of the vehicle. Detective Fry, who was then standing near the passenger side of the car, informed Ms. Gomez of the same. Detective Fry also noticed that Ms. Gomez had a purse on her lap. He asked Ms. Gomez if she had anything illegal on her person or in her purse, to which she replied that she did.

/////
/////
/////

---

[1] At the time of the challenged search and seizure Jessica McKenry was the defendant's girlfriend.

2

not.  Detective Fry then asked her if could search her purse.  Ms. Gomez consented to the search.[2]

Upon searching Ms. Gomez's purse, Detective Fry discovered a dark-colored "money" pouch in which was located a .22 caliber handgun.[3]  Ms. Gomez denied any knowledge of the gun.  Defendant McKenry admitted to having handled and inspected the gun approximately a week earlier.  Detective Vallez arrested defendant and performed a full search of his person, resulting in the discovery of six .22 caliber bullets in defendant's front pant pocket.

## II. Discussion

Defendant argues that the two handguns and ammunition should all be suppressed under the "fruit of the poisonous tree" doctrine because the initial traffic stop of the car he was driving was unlawful.  Alternatively, defendant contends that the search of Ms. Gomez's purse was a warrantless search of a container conducted in violation of the Fourth Amendment, thus rendering any evidence discovered thereafter the "fruit of the poisonous tree."  These arguments are not supported by the evidence before the court and are therefore unpersuasive.

1. **The Traffic Stop Was Lawful**

A simple traffic stop constitutes a seizure under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  Thus, a traffic stop is subject to the constitutional imperatives guaranteeing individuals freedom "against unreasonable searches and seizures."  *Id*. at 810.  "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id*.  Reasonableness is based solely on objective circumstances, and "[t]he fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop."  *United States v. Fowlkes,* 804

---

[2] At the evidentiary hearing, Ms. Gomez denied consenting to the search of her purse. However, she also testified that, on August 4, 2015, shortly after her initial encounter with Detective Fry, Detective Fry asked her to confirm in a recorded conversation that she had, in fact, just consented to him searching her purse and that she had done so. In addition, the court has listened to the recorded interview which was admitted into evidence at the hearing. In it Ms. Gomez clearly answers "yes" when asked by Detective Fry whether she had just moments earlier consented to his search of her purse.

[3] The court has reviewed the video taken at the scene, admitted as Defense Exhibit K at the evidentiary hearing, which depicts the purse, the dark-colored "money" pouch and the handgun found in the car driven by defendant.

F.3d 954, 971 (9th Cir. 2015) (*quoting United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000)).

The California Vehicle Code requires that "[a]ll lighting equipment of a required type installed on a vehicle shall at all times be maintained in *good working order*." Cal. Veh. Code § 24252(a) (emphasis added). "Good working order" is not defined in the statute. Nor does case law provide much guidance on the precise meaning of that phrase. Nonetheless, the government argues that a partially lit third brake light violates this provision of the vehicle code and therefore provided Detective Vallez an objectively reasonable basis for performing a traffic stop of the car driven by defendant. The court agrees.

In so concluding, this court relies on two decisions, one from the California Court of Appeals and one from the Ninth Circuit. The California Court of Appeal decision, *In re Justin K*, involved a minor who was arrested for driving under the influence after he was pulled over for having an inoperable third brake light. 98 Cal.Ap.4th 695, 697 (2002). A motion to suppress evidence was filed on behalf of the minor challenging the traffic stop as unlawful on the grounds that he still had two properly operating brake lights, and thus was not in violation of the California Vehicle Code. *Id*. at 700. The California Court of Appeal rejected the argument as unavailing, noting that "[b]ecause [the third brake light] was a required piece of lighting equipment for [the minor's] car, [the minor] was obliged to maintain it in good working order." *Id*. "His failure to do so constituted a violation of section 24252[,]" which served as an objectively reasonable basis for performing a traffic stop. *Id*.

Although in an unpublished decision of no precedential value (*see* Ninth Circuit Local Rule 36-3), the Ninth Circuit Court of Appeals has construed the statutory language in question even more broadly, holding that a car's brake light was not in "good working order"— even though it "emitted a visible red light"— because there was a "one to two inch rectangular crack" in the light's cover. *United States v. Wekall*, No. 03-50268, 87 Fed. Appx. 79, 80 (9th Cir. Feb. 4, 2004).

While the facts here do not align perfectly with those presented in either case, they nonetheless are instructive. The decisions in both *In re Justin K* and *Wekall* show that the mere

4

ability for a car to signal that it is braking does not render it in compliance with Vehicle Code § 24252(a). Rather, the California Vehicle Code requires that "*all* lighting equipment" — which this court deems to also include parts such as bulbs and coverings based on the decisions discussed above — be in "good working order." Thus, a middle brake light that does not fully illuminate, whether as a result of burnt out bulbs or dampened voltage, violates Vehicle Code § 24252(a) and can serve as an objectively reasonable basis for a police officer performing a traffic stop.

Here, the evidence before the court clearly establishes that the right half of the middle brake light on the car that defendant was driving did not fully illuminate. Thus, Detective Vallez had an objectively reasonable basis for performing a traffic stop, placing the stop of the car defendant was driving well within the bounds of the Fourth Amendment.[4]

2. **Ms. Gomez Consented to the Search of Her Purse**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 356 (1967). One such exception is a search conducted pursuant to voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593–94 (1946)); *United States v. Rothman*, 492 F.2d 1260, 1263 (9th Cir. 1974). "The government bears the burden of proving that consent was voluntary." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009). *See also United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012); *Rothman*, 492 F.2d at 1263 ("The government bears the initial burden of proving consent.").

/////

---

[4] Of course, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution" and thus "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *United States v. Evans,* 786 F.3d 779, 784 (9th Cir. 2015) (*quoting Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Here, however, there is no evidence before the court suggesting this traffic stop was unreasonably prolonged, nor does defendant so contend. Rather, the uncontroverted testimony was that within four or five minutes of the car being stopped it was determined that the defendant was on searchable supervision.

A court must review "the totality of the circumstances" when determining whether a consent to search was voluntarily given. *Brown*, 563 F.3d at 415 (quoting *Schneckloth*, 412 U.S. at 227). Five factors, as articulated by the Ninth Circuit, serve as guideposts in making this determination:

> (1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained.

*Id*. (alteration in original) (quoting *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004).[5] These factors are "not a mechanized formula to resolve the voluntariness inquiry[,]" and "[n]o one factor is determinative in the equation." *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2003).

Here, multiple factors indicate that Ms. Gomez voluntarily consented to the search of her purse. First, Ms. Gomez was not in custody. Only three officers participated in the traffic stop of the car within which she was a passenger. The stop occurred during the afternoon in a public shopping center, and there was is no evidence that the police ever drew their firearms. *Compare with Brown*, 563 F.3d at 415 (individual who consented to search was not in custody despite being approached by six officers with guns drawn and being handcuffed while being patted down). At the evidentiary hearing Detective Fry convincingly testified that he asked Ms. Gomez

---

[5] "With respect to the first factor, a seizure occurs when taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (internal quotation marks and citations omitted). Factors to be considered in making this determination of custody include:

> (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's officious or authoritative manner would imply that compliance would be compelled; and (5) whether the officers advised the detainee of his right to terminate the encounter.

*United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (citing *Orhorhaghe v. INS*, 38 F.3d 488 (9th Cir. 1994)).

if he could search her purse and that she consented. Shortly after conducting the search resulting in the discovery of the .22 caliber handgun, Detective Fry Mirandized Ms. Gomez and had her verify, during a recorded conversation, that she had just moments earlier consented to the search of her purse. This court finds this testimony and evidence to be more credible than Ms. Gomez's subsequent, and much later, testimony that she did not consent to the search of her purse on the day in question. The evidence credited by the court is sufficient to establish that Ms. Gomez's consent to the search was voluntary.

### 3. In Any Event, Defendant Has Failed to Establish Standing

However, even if this court were to have found that the government did not meet its burden of establishing a voluntary consent to search, defendant has failed to establish that he has standing to challenge the search of Ms. Gomez's purse. An individual cannot challenge an allegedly illegal search absent a showing "that he had a legitimate expectation of privacy" in the thing searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978); *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)). With respect to Ms. Gomez's purse, defendant has made no such showing. Ms. Gomez told the officers that the purse "was her purse and [that] she [didn't] share it with anyone." (Doc. No. 16, Exh. I). There is no evidence suggesting that defendant ever "sought or received access to [Ms. Gomez's] purse" or that he had "any right to exclude other persons from access to [Ms. Gomez's] purse." *Id*. (citing *Rakas*, 439 U.S. at 149).[6]

Accordingly, the court alternately concludes that defendant has failed to establish that he has standing to challenge the search of Ms. Gomez's purse.

/////

/////

/////

/////

---

[6] As the Ninth Circuit has noted, the act of storing contraband in a companion's handbag can be seen as refuting a legitimate expectation of privacy in that container because the act is an attempt to disclaim ownership of the contraband. *United States v. Medina-Verdugo*, 637 F.2d 649, 652 (9th Cir. 1980).

7

### III. Conclusion

For all of the reasons set forth above, defendant's motion to suppress evidence (Doc. No. 16) is denied.

IT IS SO ORDERED.

Dated:     **February 23, 2016**              _____
UNITED STATES DISTRICT JUDGE